**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SPATIAL GENOMICS, INC. and THE CALIFORNIA INSTITUTE OF TECHNOLOGY,<br><br>Plaintiffs,<br><br>v.<br><br>10x GENOMICS, INC.,<br><br>Defendant. | C.A. No. 26-cv-00963-GBW<br><br>**JURY TRIAL DEMANDED** |
| 10x GENOMICS, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>SPATIAL GENOMICS, INC.,<br><br>Counterclaim Defendant. | |

# 10x GENOMICS, INC.'S ANSWER AND COUNTERCLAIMS TO SPATIAL GENOMICS, INC. and THE CALIFORNIA INSTITUTE OF TECHNOLOGY'S COMPLAINT

## ANSWER

Defendant 10x Genomics, Inc. ("10x" or "Defendant") hereby answers the allegations in the Complaint for Patent Infringement ("Complaint") of Spatial Genomics, Inc. ("SG") and the California Institute of Technology ("Caltech") (collectively, "Plaintiffs"). Unless expressly admitted, 10x denies each and every allegation in Plaintiffs' Complaint. To the extent that any non-numbered statements in the Complaint contain allegations, 10x denies each and every such allegation.

## SG and CALTECH'S ALLEGATIONS RE: NATURE OF THE ACTION

1. 10x admits that Plaintiffs' Complaint purports to state an action for infringement of U.S. Patent Nos. 10,457,980 (the "980 Patent"); 11,473,129 (the "129 Patent"); 12,305,224 (the "224 Patent"); 12,601,007 (the "007 Patent"); and 12,630,868 (the "868 Patent") (collectively, the "Asserted Caltech Patents") arising under the patent laws of the United States, 35 U.S.C. § 271. Except as so admitted, 10x denies any remaining allegations of this paragraph.

2. 10x admits that Plaintiffs' Complaint purports to state a cause of action arising under the patent laws of the United States, 35 U.S.C. § 271. Except as so admitted, 10x denies any remaining allegations of this paragraph.

## SG and CALTECH'S ALLEGATIONS RE: THE PARTIES

3. 10x lacks sufficient knowledge or information to form a belief as to the truth of these allegations and on that basis denies them.

4. 10x lacks sufficient knowledge or information to form a belief as to the truth of these allegations and on that basis denies them.

5. Admitted.

6. Denied.

## SG and CALTECH'S ALLEGATIONS RE: JURISDICTION AND VENUE

7. 10x admits that Plaintiffs' Complaint purports to state an action for infringement of the Asserted Caltech Patents arising under the patent laws of the United States, 35 U.S.C. § 271. This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, 10x admits that the Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8. This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, 10x admits that it is a Delaware corporation and that this Court has personal jurisdiction over 10x and that venue is proper in this district pursuant to 28 U.S.C. § 1400(b) for purposes of this action. Except as so admitted, 10x denies the remaining allegations of this paragraph.

**SG and CALTECH'S ALLEGATIONS RE: BACKGROUND**

**SG's Innovative seqFISH Technology and GenePS Platform**[1]

9. 10x lacks sufficient knowledge or information to form a belief as to the truth of these allegations and on that basis denies them.

10. 10x lacks sufficient knowledge or information to form a belief as to the truth of these allegations and on that basis denies them.

11. 10x lacks sufficient knowledge or information to form a belief as to the truth of these allegations and on that basis denies them.

12. This paragraph states legal conclusions to which no response is required. To the extent a response is required, 10x lacks sufficient knowledge or information to form a belief as to the truth of these allegations and on that basis denies them.

13. This paragraph does not contain allegations against 10x but general characterizations of seqFISH. As such, they do not conform to Rule 8 and no specific admission or denial from 10x is required. To the extent that an answer is required, 10x lacks sufficient knowledge or information to form a belief as to the truth of these allegations and on that basis denies them.

[1] For convenience only, 10x reproduces the headings in Plaintiffs' Complaint. 10x denies any allegations and characterizations in the headings.

**10x's Infringing Spatial Biology Platforms**

14. 10x admits that it makes, uses, sells, offers to sell, and/or imports into the United States the Xenium platform, which includes the Xenium Analyzer and related accessories and consumables. 10x admits that the Xenium platform is one of its spatial biology platforms. 10x lacks sufficient knowledge or information to form a belief as to what Plaintiffs mean by "[10x's] spatial biology platforms" and on that basis denies the allegations of this paragraph. Except as so admitted, 10x denies the remaining allegations of this paragraph.

15. 10x admits that it commercially launched its Xenium platform on December 8, 2022. 10x admits that the Xenium platform includes the Xenium Analyzer instrument, Xenium reagents and panels, and Xenium Explorer software. 10x admits that the Xenium platform can be used to create spatial maps of gene expression, but at subcellular resolution. Except as so admitted, 10x denies the remaining allegations of this paragraph.

16. 10x admits that its Xenium Analyzer instrument enables its users to detect and preserve the cellular locations of hundreds to thousands of RNA targets in fresh frozen or FFPE tissue sections and provides users with a map of gene expression patterns. 10x admits, as it stated on its website, that the Xenium workflow uses padlock probes that "contain a gene-specific barcode sequence that is used to generate a unique optical signature of each transcript." The probes are then ligated and undergo rolling circle amplification. *See* https://www.10xgenomics.com/in-situ-technology. On the Xenium instrument, "the amplified products in the samples undergo successive rounds of fluorescent probe hybridization, imaging, and removal. An optical signature specific to each gene is generated, enabling identification of the target gene." Then, "a spatial map of the transcripts is built across the entire tissue section." *Id*. Except as so admitted, 10x denies the remaining allegations of this paragraph.

17. 10x admits that, as it stated in the Xenium user guide, the Xenium Analyzer instrument "performs successive rounds of fluorescent probe hybridization, imaging, and probe removal to generate an optical signature for each gene transcript." Xenium User Guide, Rev. K, at 7, available at https://cdn.10xgenomics.com/image/upload/v1754601292/support-documents/CG000584_Xenium_Analyzer_UserGuide_RevK.pdf. 10x admits that, as it stated in the Xenium user guide, the Xenium Analyzer instrument "captures vertical stacks of images at every cycle (of fluorescent probe hybridization, imaging, and probe removal) and in every channel for multiple fields of view, which need to be processed, corrected and stitched to build a single image representing the tissue section. The pipeline detects puncta in every cycle and every image to observe all potential mRNA. These puncta are decoded into gene IDs, and each decoded transcript is assigned a quality score." *Id*. at 27. Except as so admitted, 10x denies the remaining allegations of this paragraph.

18. 10x admits that it provides installation services necessary for Xenium Analyzer, Vibration Isolation Table, and Xenium Analysis Computer. Xenium User Guide at 16. Except as so admitted, 10x denies the remaining allegations of this paragraph.

19. 10x admits that it sells accessories and consumables for use with the Xenium Analyzer instrument. 10x admits that it sells the Xenium Instrument Bundle, Xenium Analysis Computer, Instrument Accessory Kits, and certain kits, reagents, and equipment for use with the Xenium Analyzer instrument. Except as so admitted, 10x denies the remaining allegations of this paragraph.

20. 10x admits that it sells pre-designed, add-on custom, and standalone custom Gene Panels for use with the Xenium Analyzer instrument. Xenium User Guide at 23. 10x admits that it sells protein subpanels related to immunology, cancer, and proliferation markers for use with the

Xenium Analyzer instrument. Xenium User Guide at 24. Except as so admitted, 10x denies the remaining allegations of this paragraph.

21. 10x admits that it provides instructions to its customers regarding setup, preparation, and use of the Xenium Analyzer instrument, accessories and consumables. Except as so admitted, 10x denies the remaining allegations of this paragraph.

22. 10x admits that combined sales of Xenium instruments and related consumables have increased year-over-year from 2023-2025. 10x admits that it sells products to academic and translational researchers and biopharmaceutical companies, including the Xenium Analyzer instruments, slides, reagents, and other consumables for the Xenium platform. 10x admits that it also provides software used with the Xenium platform, including the on-instrument analysis pipeline, Xenium Explorer, and Xenium Ranger. Xenium User Guide at 26-27. 10x admits that 10x's customers purchased Xenium instruments and consumables from 10x and used them in accordance with 10x's instructions. Except as so admitted, 10x denies the remaining allegations of this paragraph.

23. 10x admits its customers use the Xenium platform to map tumor microenvironments, validate potential novel drug targets, and understand cellular organization within native tissue. 10x admits that the Asia-Pacific Spatial Translational Research Alliance uses custom Xenium panels to map how cancer and immune cells communicate in ten major cancer types. Except as so admitted, 10x denies the remaining allegations of this paragraph.

24. 10x admits that 10x customers for the Xenium platform include the Genome Institute of Singapore, the University of Adelaide, MD Anderson Cancer Center, Duke University, the University of Michigan, the University of Wisconsin-Madison, the University of Alabama at Birmingham, the Indiana University School of Medicine, and the University of Pittsburgh –

Hillman Cancer Center. Except as so admitted, 10x denies the remaining allegations of this paragraph.

25. 10x admits that on April 18, 2026, it announced its new Atera platform, which is a spatial biology platform. 10x admits that the Atera platform includes an all-in-one instrument for sample imaging, liquid handling, hardware stabilization, and onboard analysis. 10x admits that the Atera platform is currently available for early access users and researchers have used the Atera platform provided by 10x on an early access basis. Except as so admitted, 10x denies the remaining allegations of this paragraph.

**The Asserted Caltech Patents**

26. 10x admits that the Asserted Caltech Patents list Caltech as their assignee. 10x lacks sufficient knowledge or information to form a belief as to the truth of the rest of the allegations in this paragraph and on that basis denies them.

**a. The 980 Patent**

27. 10x admits that Exhibit 1 appears to be an uncertified copy of the 980 Patent. The 980 Patent states on its face that it issued from U.S. Application No. 14/435,735 filed on April 14, 2015, and PCT No. PCT/US2014/036258 filed on April 30, 2014. The 980 Patent also lists U.S. Provisional Application No. 61/817,651 filed on April 30, 2013 and U.S. Provisional Application No. 61/971,974 filed on March 28, 2014 as its related U.S. applications. Except as so admitted, 10x denies the remaining allegations of this paragraph.

28. Admitted.

29. 10x admits that claim 1 of the 980 Patent recites the language quoted in this paragraph.

30. 10x admits that claim 2 of the 980 Patent recites the language quoted in this paragraph.

31. 10x admits that claim 9 of the 980 Patent recites the language quoted in this paragraph.

32. 10x lacks sufficient knowledge or information to form a belief as to the truth of these allegations and on that basis denies them.

**b. The 129 Patent**

33. 10x admits that Exhibit 2 appears to be an uncertified copy of the 129 Patent. The 129 Patent states on its face that it issued from U.S. Application No. 16/572,511 filed on September 16, 2019, and is a continuation of U.S. Application No. 14/435,735 filed as PCT/US2014/036258 on April 30, 2014. The 129 Patent also lists U.S. Provisional Application No. 61/817,651 filed on April 30, 2013 and U.S. Provisional Application No. 61/971,974 filed on March 28, 2014 as its related U.S. applications. Except as so admitted, 10x denies the remaining allegations of this paragraph.

34. Admitted.

35. 10x admits that claim 1 of the 129 Patent recites the language quoted in this paragraph.

36. 10x admits that dependent claims 2, 8, 12, 28, and 52 of the 129 Patent recite the language quoted in this paragraph.

37. 10x lacks sufficient knowledge or information to form a belief as to the truth of these allegations and on that basis denies them.

**c. The 224 Patent**

38. 10x admits that Exhibit 3 appears to be an uncertified copy of the 224 Patent. The 224 Patent states on its face that it issued from U.S. Application No. 18/906,096 filed on Oct. 3, 2024, and is a continuation of U.S. Application No. 17/940,650, filed on Sep. 8, 2022, which is a continuation of application No. 16/572,511, filed on Sep. 16, 2019, which is a continuation of

application No. 14/435,735, filed as application No. PCT/US2014/036258 on Apr. 30, 2014. The 224 Patent also lists U.S. Provisional Application No. 61/817,651 filed on April 30, 2013 and U.S. Provisional Application No. 61/971,974 filed on March 28, 2014 as its related U.S. applications. Except as so admitted, 10x denies the remaining allegations of this paragraph.

39. Admitted.

40. 10x admits that claim 1 of the 224 Patent recites the language quoted in this paragraph.

41. 10x admits that claim 11 of the 224 Patent recites the language quoted in this paragraph.

42. 10x admits that claims 4, 20, and 27 of the 224 Patent recite the language quoted in this paragraph.

43. 10x lacks sufficient knowledge or information to form a belief as to the truth of these allegations and on that basis denies them.

**d. The 007 Patent**

44. 10x admits that Exhibit 4 appears to be an uncertified copy of the 007 Patent. The 007 Patent states on its face that it issued from U.S. Application No. 17/940,650 filed on Sep. 8, 2022, and is a continuation of U.S. Application No. 16/572,511, filed on Sep. 16, 2019, which is a continuation of application No. 14/435,735, filed as application No. PCT/US2014/036258 on Apr. 30, 2014. The 007 Patent also lists U.S. Provisional Application No. 61/817,651 filed on April 30, 2013 and U.S. Provisional Application No. 61/971,974 filed on March 28, 2014 as its related U.S. applications. Except as so admitted, 10x denies the remaining allegations of this paragraph.

45. Admitted.

46. 10x admits that claim 1 of the 007 Patent recites the language quoted in this paragraph.

47. 10x admits that claims 3, 6, and 12 of the 007 Patent recite the language quoted in this paragraph.

48. 10x lacks sufficient knowledge or information to form a belief as to the truth of these allegations and on that basis denies them.

**e. The 868 Patent**

49. 10x admits that Exhibit 5 appears to be an uncertified copy of the 868 Patent. The 868 Patent states on its face that it issued from U.S. Application No. 17/940,356 filed on Sep. 8, 2022, and is a continuation of U.S. Application No. 16/572,511, filed on Sep. 16, 2019, which is a continuation of application No. 14/435,735, filed as application No. PCT/US2014/036258 on Apr. 30, 2014. The 868 Patent also lists U.S. Provisional Application No. 61/817,651 filed on April 30, 2013 and U.S. Provisional Application No. 61/971,974 filed on March 28, 2014 as its related U.S. applications. Except as so admitted, 10x denies the remaining allegations of this paragraph.

50. Admitted.

51. 10x admits that claim 2 of the 868 Patent recites the language quoted in this paragraph.

52. 10x admits that claims 27, 28, and 38 of the 868 Patent recite the language quoted in this paragraph.

53. 10x admits that claim 29 of the 868 Patent recites the language quoted in this paragraph.

54. 10x admits that claims 30, 45, and 46 of the 868 Patent recite the language quoted in this paragraph.

55. 10x lacks sufficient knowledge or information to form a belief as to the truth of these allegations and on that basis denies them.

**10x's Knowledge of the Asserted Caltech Patents and 10x's Infringement Thereof**

56. 10x admits that in May and June 2021, 10x and Spatial Genomics executives or employees had phone and in-person discussions. Except as so admitted, 10x denies the remaining allegations of this paragraph.

57. 10x admits that it is the assignee of U.S. Patent No. 12,360,105. 10x admits that the 105 Patent incorporates the 980 Patent by reference. Except as so admitted, 10x denies the remaining allegations of this paragraph.

58. 10x admits that on April 24, 2024, its litigation counsel took the deposition of Prof. Long Cai in connection with a patent infringement action involving Vizgen, Inc. 10x admits that the 129 Patent was used as an exhibit in this deposition. Except as so admitted, 10x denies the remaining allegations of this paragraph.

59. 10x admits that in *10x Genomics, Inc. v. Vizgen, Inc.*, 1:22-cv-00595-MFK (D. Del.), D.I. 138, Vizgen asserted that 10x's Xenium platform and workflow infringed U.S. Patent No. 11,098,303, and that Vizgen had an exclusive license to the 303 Patent. Except as so admitted, 10x denies any remaining allegations of this paragraph.

60. 10x admits that at the April 24, 2024 deposition, 10x's litigation counsel sought testimony regarding the 129 Patent and the PCT/US2014/036258 application, and they were entered as exhibits. 10x's litigation counsel also sought testimony about the seqFISH technology and the MERFISH technology. Except as so admitted, 10x denies any remaining allegations of this paragraph.

61. Denied.

62. 10x admits that on July 22, 2024, 10x had discussions with Spatial Genomics. 10x admits that it has not obtained rights to the Asserted Caltech Patents. Except as so admitted, 10x denies any remaining allegations of this paragraph.

**10x Has Caused Irreparable Harm to SG**

63. 10x admits that it has sold and continues to sell the Xenium platform. Except as so admitted, 10x denies any remaining allegations of this paragraph.

64. 10x admits that 10x and Spatial Genomics sell products that may compete for the same customers. 10x admits that the Xenium platform may compete with GenePS for the same customers. Except as so admitted, 10x denies any remaining allegations of this paragraph.

65. 10x admits that on or around December 8, 2022, 10x commercially launched the Xenium platform. 10x lacks sufficient knowledge or information to form a belief as to when SG began commercial sales of the GenePS platform and on that basis denies the allegation. Except as so admitted, 10x denies any remaining allegations of this paragraph.

66. Admitted.

67. Denied.

68. This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, 10x denies the allegations of this paragraph.

**SG and CALTECH'S COUNT I: Infringement of the 980 Patent**

69. 10x incorporates and restates by reference its responses to paragraphs 1-68 of Plaintiffs' Complaint as though fully set forth herein.

70. 10x admits that the 980 Patent, on its face, lists Caltech as its assignee. Except as so admitted, 10x lacks sufficient knowledge or information to form a belief as to the truth of these allegations and on that basis denies them.

71. 10x lacks sufficient knowledge or information to form a belief as to the truth of these allegations and on that basis denies them.

72. Denied.

73. 10x admits that it received a notice letter from Spatial Genomics on August 4, 2026, alleging that 10x has infringed the 980 Patent. 10x admits that Spatial Genomics filed the Complaint on August 5, 2026. 10x admits that 10x and Spatial Genomics conducted a discussion on or around June 1, 2021. 10x admits that it was aware of the patent family containing the 980 Patent as of June 1, 2021. Except as so admitted, 10x denies any remaining allegations of this paragraph.

74. Denied.

75. Denied.

76. This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, 10x denies the allegations of this paragraph.

77. This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, 10x denies the allegations of this paragraph.

78. This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, 10x denies the allegations of this paragraph.

**SG and CALTECH'S COUNT II: Infringement of the 129 Patent**

79. 10x incorporates and restates by reference its responses to paragraphs 1-78 of Plaintiffs' Complaint as though fully set forth herein.

80. 10x admits that the 129 Patent, on its face, lists Caltech as its assignee. Except as so admitted, 10x lacks sufficient knowledge or information to form a belief as to the truth of these allegations and on that basis denies them.

81. 10x lacks sufficient knowledge or information to form a belief as to the truth of these allegations and on that basis denies them.

82. Denied.

83. 10x admits that it received a notice letter from Spatial Genomics on August 4, 2026, alleging that 10x has infringed the 129 Patent. 10x admits that Spatial Genomics filed the Complaint on August 5, 2026. 10x admits that 10x and Spatial Genomics conducted a discussion on or around June 1, 2021. 10x admits that it was aware of the patent family containing the 129 Patent as of June 1, 2021. Except as so admitted, 10x denies any remaining allegations of this paragraph.

84. Denied.

85. Denied.

86. This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, 10x denies the allegations of this paragraph.

87. This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, 10x denies the allegations of this paragraph.

88. This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, 10x denies the allegations of this paragraph.

**SG and CALTECH'S COUNT III: Infringement of the 224 Patent**

89. 10x incorporates and restates by reference its responses to paragraphs 1-88 of Plaintiffs' Complaint as though fully set forth herein.

90. 10x admits that the 224 Patent, on its face, lists Caltech as its assignee. Except as so admitted, 10x lacks sufficient knowledge or information to form a belief as to the truth of these allegations and on that basis denies them.

91. 10x lacks sufficient knowledge or information to form a belief as to the truth of these allegations and on that basis denies them.

92. Denied.

93. 10x admits that it received a notice letter from Spatial Genomics on August 4, 2026, alleging that 10x has infringed the 224 Patent. 10x admits that Spatial Genomics filed the Complaint on August 5, 2026. 10x admits that 10x and Spatial Genomics conducted a discussion on or around June 1, 2021. 10x admits that it was aware of the patent family containing the 224 Patent as of June 1, 2021. Except as so admitted, 10x denies any remaining allegations of this paragraph.

94. Denied.

95. Denied.

96. This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, 10x denies the allegations of this paragraph.

97. This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, 10x denies the allegations of this paragraph.

98. This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, 10x denies the allegations of this paragraph.

**SG and CALTECH'S COUNT IV: Infringement of the 007 Patent**

99. 10x incorporates and restates by reference its responses to paragraphs 1-98 of Plaintiffs' Complaint as though fully set forth herein.

100. 10x admits that the 007 Patent, on its face, lists Caltech as its assignee. Except as so admitted, 10x lacks sufficient knowledge or information to form a belief as to the truth of these allegations and on that basis denies them.

101. 10x lacks sufficient knowledge or information to form a belief as to the truth of these allegations and on that basis denies them.

102. Denied.

103. 10x admits that it received a notice letter from Spatial Genomics on August 4, 2026, alleging that 10x has infringed the 007 Patent. 10x admits that Spatial Genomics filed the Complaint on August 5, 2026. 10x admits that 10x and Spatial Genomics conducted a discussion on or around June 1, 2021. 10x admits that it was aware of the patent family containing the 007 Patent as of June 1, 2021. Except as so admitted, 10x denies any remaining allegations of this paragraph.

104. Denied.

105. Denied.

106. This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, 10x denies the allegations of this paragraph.

107. This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, 10x denies the allegations of this paragraph.

108. This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, 10x denies the allegations of this paragraph.

**SG and CALTECH'S COUNT V: Infringement of the 868 Patent**

109. 10x incorporates and restates by reference its responses to paragraphs 1-108 of Plaintiffs' Complaint as though fully set forth herein.

110. 10x admits that the 868 Patent, on its face, lists Caltech as its assignee. Except as so admitted, 10x lacks sufficient knowledge or information to form a belief as to the truth of these allegations and on that basis denies them.

111. 10x lacks sufficient knowledge or information to form a belief as to the truth of these allegations and on that basis denies them.

112. Denied.

113. 10x admits that it received a notice letter from Spatial Genomics on August 4, 2026, alleging that 10x has infringed the 868 Patent. 10x admits that Spatial Genomics filed the Complaint on August 5, 2026. 10x admits that 10x and Spatial Genomics conducted a discussion on or around June 1, 2021. 10x admits that it was aware of the patent family containing the 868 Patent as of June 1, 2021. Except as so admitted, 10x denies any remaining allegations of this paragraph.

114. Denied.

115. Denied.

116. This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, 10x denies the allegations of this paragraph.

117. This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, 10x denies the allegations of this paragraph.

118. This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, 10x denies the allegations of this paragraph.

## 10x'S DEFENSES TO PLAINTIFFS' COUNTS I-V

By listing any matter as a defense herein, 10x does not assume the burden of proving any matter about which Plaintiffs, or any other party, bear the burden of proof under applicable law.

## 10x'S FIRST DEFENSE—FAILURE TO STATE A CLAIM

Plaintiffs fail to state a claim upon which relief can be granted.

**10x'S SECOND DEFENSE—NON-INFRINGEMENT**

10x has not infringed and is not infringing directly, indirectly, or in any other manner any valid and enforceable claim of the Asserted Caltech Patents, either literally or under the doctrine of equivalents.

**10x'S THIRD DEFENSE—INVALIDITY**

The claims of the Asserted Caltech Patents are invalid for failing to comply with one or more of the requirements for patentability under, including but not limited to, 35 U.S.C. §§ 101, 102, 103, 112, 116, and 282 et seq., and the rules, regulations, and laws pertaining to those provisions, including the applicable provisions of Title 37 of the Code of Federal Regulations.

**10x'S FOURTH DEFENSE—LIMITATION ON DAMAGES**

Plaintiffs' infringement claims and Prayer for Relief are limited by 35 U.S.C. § 287.

**10x'S FIFTH DEFENSE—ADEQUATE REMEDY AT LAW**

Plaintiffs are not entitled to equitable relief with respect to the Asserted Caltech Patents under any theory because Plaintiffs have not and will not suffer irreparable harm, are not without adequate remedy at law, the balance of the hardships does not favor entry of an injunction, and/or public policy concerns weigh against any equitable relief.

**10x'S SIXTH DEFENSE—NO EXCEPTIONAL CASE**

10x has not engaged in any conduct that would make this case exceptional and/or would entitle Plaintiffs to an award of attorneys' fees.

## I. 10x'S DECLARATORY JUDGMENT COUNTERCLAIMS

10x hereby alleges declaratory judgment counterclaims against Plaintiffs.

**NATURE OF ACTION**

1. These are counterclaims for declarations of non-infringement, invalidity, and/or unenforceability of one or more claims of U.S. Patent Nos. 10,457,980 (the "980 Patent");

11,473,129 (the "129 Patent"); 12,305,224 (the "224 Patent"); 12,601,007 (the "007 Patent"); and 12,630,868 (the "868 Patent") (collectively, the "Asserted Caltech Patents").

## PARTIES

2. 10x is a Delaware corporation with its principal place of business at 6230 Stoneridge Mall Road, Pleasanton, CA 94588.

3. SG is a Delaware corporation with its principal place of business at 145 Vista Ave Suite 111, Pasadena, CA 91107.

4. Caltech is a non-profit private university organized under the laws of the State of California, with its principal place of business at 1200 East California Boulevard, Pasadena, CA 91125.

## JURISDICTION AND VENUE

5. This is an action for declaratory judgment of non-infringement and invalidity of the Asserted Caltech Patents arising under the patent laws of the United States, 35 U.S.C. § 1 et seq. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. An actual case and controversy exists under the Declaratory Judgment Act because Plaintiffs have sued 10x asserting that the Asserted Caltech Patents are valid, enforceable, and infringed by 10x, and 10x denies the allegations.

6. This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338(a), in combination with 28 U.S.C. §§ 2201-2202.

7. This Court has personal jurisdiction over Plaintiffs because SG is a Delaware corporation and Spatial Genomics and Caltech filed their Complaint in this action.

8. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Spatial Genomics is a Delaware corporation and SG and Caltech filed their Complaint in this action.

## BACKGROUND

9. In the Background to SG and Caltech's Counts I-V, SG and Caltech allege that Spatial Genomics is the exclusive licensee and Caltech is the assignee of the Asserted Caltech Patents.

10. SG and Caltech's Counts I-V expressly accuse 10x of infringing the Asserted Caltech Patents.

11. As a result of SG and Caltech's actions and statements, including the filing and continued assertion of their Complaint, an actual and justiciable controversy exists between 10x and SG and Caltech regarding the validity and infringement of the Asserted Caltech Patents.

12. A judicial declaration and determination are necessary and appropriate at this time given SG and Caltech's allegations and in order that 10x may ascertain its rights and duties with respect to the Asserted Caltech Patents.

## COUNT I: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 10,457,980

13. 10x restates and incorporates by reference the denials, admissions, allegations, and defenses contained in its Answer and Defenses to Plaintiffs' Complaint against 10x as if fully set forth herein. 10x further restates and incorporates by reference its allegations in paragraphs 1 through 12 of its Declaratory Judgment Counterclaims.

14. In Count I of Plaintiffs' Complaint, SG and Caltech have expressly accused 10x of infringing the 980 Patent.

15. 10x has not been and is not now infringing, directly or indirectly, literally or under the doctrine of equivalents, or willfully, any valid and enforceable claim of the 980 Patent.

16. 10x does not infringe any valid and enforceable claims of the 980 Patent at least because neither 10x nor anyone else has used or uses 10x's products to practice each and every

step of the independent claims of the 980 Patent. For example, neither 10x nor anyone else used or uses 10x's Xenium Platform such that (1) performing steps (a) to (e) in Claim 1 "produce[s] a unique molecular barcode" and (2) performing steps (a) to (e) in Claim 1 "produce[s] a unique molecular barcode" for "each unique nucleic acid molecule in the sample." As another example, neither 10x nor anyone else used or uses 10x's Xenium Platform such that (1) "detectably labeled oligonucleotides" "targets a transcript or DNA locus" as in Claim 2 and (2) performing steps (a) to (e) in Claim 2 "produce[s] a unique molecular barcode" and (3) performing steps (a) to (e) in Claim 2 "produce[s] a unique molecular barcode" for "each unique transcript or DNA molecule in the sample."

17. Additionally, each of the claims of the 980 Patent is invalid as set forth below in Count II of 10x's Declaratory Judgment Counterclaims. An invalid claim cannot be infringed.

18. In view of Count I against 10x, there is an actual controversy between SG and Caltech and 10x regarding the 980 Patent. Accordingly, a valid and justiciable controversy has arisen and exists between SG and Caltech and 10x with respect to the alleged infringement of the 980 Patent. 10x desires a judicial determination and declaration of the respective rights and duties of the parties herein. Such a determination and declaration are necessary and appropriate so that the parties may ascertain their respective rights and duties.

19. 10x is entitled to a declaratory judgment that: (a) it has not infringed and is not infringing, literally or under the doctrine of equivalents, directly or indirectly, any valid and enforceable claim of the 980 Patent; and (b) it is not liable for any alleged infringement of the 980 Patent.

**COUNT II: DECLARATORY JUDGMENT OF INVALIDITY OF THE 980 PATENT**

20. 10x restates and incorporates by reference the denials, admissions, allegations, and defenses contained in its Answer and Defenses to Plaintiffs' Complaint against 10x as if fully set forth herein. 10x further restates and incorporates by reference its allegations in paragraphs 1 through 19 of its Declaratory Judgment Counterclaims.

21. The claims of the 980 Patent are invalid for failure to comply with the conditions of patentability, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, and/or 115. For example, all claims of the 980 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 at least in view of WO2013/096851 ("Levner"), which discloses and/or renders obvious all elements of the claims of the 980 Patent.

22. Accordingly, a valid and justiciable controversy has arisen and exists between SG and Caltech and 10x with respect to the validity of the 980 Patent. 10x desires a judicial determination and declaration of the respective rights and duties of the parties herein. Such a determination and declaration are necessary and appropriate so that the parties may ascertain their respective rights and duties.

23. 10x is entitled to a declaratory judgment that the claims of the 980 Patent are invalid.

**COUNT III: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 11,473,129**

24. 10x restates and incorporates by reference the denials, admissions, allegations, and defenses contained in its Answer and Defenses to Plaintiffs' Complaint against 10x as if fully set forth herein. 10x further restates and incorporates by reference its allegations in paragraphs 1 through 23 of its Declaratory Judgment Counterclaims.

25. In Count II of Plaintiffs' Complaint, Plaintiffs have expressly accused 10x of infringing the 129 Patent.

26. 10x has not been and is not now infringing, directly or indirectly, literally or under the doctrine of equivalents, or willfully, any valid and enforceable claim of the 129 Patent.

27. 10x does not infringe any valid and enforceable claims of the 129 Patent at least because neither 10x nor anyone else has used or uses 10x's products to practice each and every step of the independent claims of the 129 Patent. For example, neither 10x nor anyone else used or uses 10x's Xenium Platform such that performing steps (a) to (c) in Claim 1 "describe[s] a barcode [that] can be differentiated from another target nucleic acid in the sample by a difference in their barcodes."

28. Additionally, each of the claims of the 129 Patent is invalid as set forth below in Count IV of 10x's Declaratory Judgment Counterclaims. An invalid claim cannot be infringed.

29. In view of Count II against 10x, there is an actual controversy between SG and Caltech and 10x regarding the 129 Patent. Accordingly, a valid and justiciable controversy has arisen and exists between SG and Caltech and 10x with respect to the alleged infringement of the 129 Patent. 10x desires a judicial determination and declaration of the respective rights and duties of the parties herein. Such a determination and declaration are necessary and appropriate so that the parties may ascertain their respective rights and duties.

30. 10x is entitled to a declaratory judgment that: (a) it has not infringed and is not infringing, literally or under the doctrine of equivalents, directly or indirectly, any valid and enforceable claim of the 129 Patent; and (b) it is not liable for any alleged infringement of the 129 Patent.

## COUNT IV: DECLARATORY JUDGMENT OF INVALIDITY OF THE 129 PATENT

31. 10x restates and incorporates by reference the denials, admissions, allegations, and defenses contained in its Answer and Defenses to Plaintiffs' Complaint against 10x as if fully set

forth herein. 10x further restates and incorporates by reference its allegations in paragraphs 1 through 30 of its Declaratory Judgment Counterclaims.

32. The claims of the 129 Patent are invalid for failure to comply with the conditions of patentability, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, and/or 115. For example, all claims of the 129 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 at least in view of WO2013/096851 ("Levner"), which discloses and/or renders obvious all elements of the claims of the 129 Patent.

33. Accordingly, a valid and justiciable controversy has arisen and exists between SG and Caltech and 10x with respect to the validity of the 129 Patent. 10x desires a judicial determination and declaration of the respective rights and duties of the parties herein. Such a determination and declaration are necessary and appropriate so that the parties may ascertain their respective rights and duties.

34. 10x is entitled to a declaratory judgment that the claims of the 129 Patent are invalid.

**COUNT V: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 12,305,224**

35. 10x restates and incorporates by reference the denials, admissions, allegations, and defenses contained in its Answer and Defenses to Plaintiffs' Complaint against 10x as if fully set forth herein. 10x further restates and incorporates by reference its allegations in paragraphs 1 through 34 of its Declaratory Judgment Counterclaims.

36. In Count III of Plaintiffs' Complaint, SG and Caltech have expressly accused 10x of infringing the 224 Patent.

37. 10x has not been and is not now infringing, directly or indirectly, literally or under the doctrine of equivalents, or willfully, any valid and enforceable claim of the 224 Patent.

38. 10x does not infringe any valid and enforceable claims of the 224 Patent at least because neither 10x nor anyone else has used or uses 10x's products to practice each and every step of the independent claims of the 224 Patent. For example, neither 10x nor anyone else used or uses 10x's Xenium Platform such that (1) each "detectably labeled oligonucleotide[]" "targets a transcript" as in Claims 1 and 11 and (2) performing steps (a) to (e) in Claim 1 or Claim 11 where the "detected signals" "barcode the first target transcript, and the second target transcript in the cell."

39. Additionally, each of the claims of the 224 Patent is invalid as set forth below in Count VI of 10x's Declaratory Judgment Counterclaims. An invalid claim cannot be infringed.

40. In view of Count III against 10x, there is an actual controversy between SG and Caltech and 10x regarding the 224 Patent. Accordingly, a valid and justiciable controversy has arisen and exists between SG and Caltech and 10x with respect to the alleged infringement of the 224 Patent. 10x desires a judicial determination and declaration of the respective rights and duties of the parties herein. Such a determination and declaration are necessary and appropriate so that the parties may ascertain their respective rights and duties.

41. 10x is entitled to a declaratory judgment that: (a) it has not infringed and is not infringing, literally or under the doctrine of equivalents, directly or indirectly, any valid and enforceable claim of the 224 Patent; and (b) it is not liable for any alleged infringement of the 224 Patent.

**COUNT VI: DECLARATORY JUDGMENT OF INVALIDITY OF THE 224 PATENT**

42. 10x restates and incorporates by reference the denials, admissions, allegations, and defenses contained in its Answer and Defenses to Plaintiffs' Complaint against 10x as if fully set

forth herein. 10x further restates and incorporates by reference its allegations in paragraphs 1 through 41 of its Declaratory Judgment Counterclaims.

43. The claims of the 224 Patent are invalid for failure to comply with the conditions of patentability, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, and/or 115. For example, all claims of the 224 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 at least in view of WO2013/096851 ("Levner"), which discloses and/or renders obvious all elements of the claims of the 224 Patent.

44. Accordingly, a valid and justiciable controversy has arisen and exists between SG and Caltech and 10x with respect to the validity of the 224 Patent. 10x desires a judicial determination and declaration of the respective rights and duties of the parties herein. Such a determination and declaration are necessary and appropriate so that the parties may ascertain their respective rights and duties.

45. 10x is entitled to a declaratory judgment that the claims of the 224 Patent are invalid.

## COUNT VII: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 12,601,007

46. 10x restates and incorporates by reference the denials, admissions, allegations, and defenses contained in its Answer and Defenses to Plaintiffs' Complaint against 10x as if fully set forth herein. 10x further restates and incorporates by reference its allegations in paragraphs 1 through 45 of its Declaratory Judgment Counterclaims.

47. In Count IV of Plaintiffs' Complaint, SG and Caltech have expressly accused 10x of infringing the 007 Patent.

48. 10x has not been and is not now infringing, directly or indirectly, literally or under the doctrine of equivalents, or willfully, any valid and enforceable claim of the 007 Patent.

49. 10x does not infringe any valid and enforceable claims of the 007 Patent at least because neither 10x nor anyone else has used or uses 10x's products to practice each and every step of the claims of the 007 Patent. For example, neither 10x nor anyone else used or uses 10x's Xenium Platform such that performing steps (a) to (e) in Claim 1 where the "detected signals" "barcode the first target transcript, and the second target transcript in the cell."

50. Additionally, each of the claims of the 007 Patent is invalid as set forth below in Count VIII of 10x's Declaratory Judgment Counterclaims. An invalid claim cannot be infringed.

51. In view of Count IV against 10x, there is an actual controversy between SG and Caltech and 10x regarding the 007 Patent. Accordingly, a valid and justiciable controversy has arisen and exists between SG and Caltech and 10x with respect to the alleged infringement of the 007 Patent. 10x desires a judicial determination and declaration of the respective rights and duties of the parties herein. Such a determination and declaration are necessary and appropriate so that the parties may ascertain their respective rights and duties.

52. 10x is entitled to a declaratory judgment that: (a) it has not infringed and is not infringing, literally or under the doctrine of equivalents, directly or indirectly, any valid and enforceable claim of the 007 Patent; and (b) it is not liable for any alleged infringement of the 007 Patent.

## COUNT VIII: DECLARATORY JUDGMENT OF INVALIDITY OF THE 007 PATENT

53. 10x restates and incorporates by reference the denials, admissions, allegations, and defenses contained in its Answer and Defenses to Plaintiffs' Complaint against 10x as if fully set forth herein. 10x further restates and incorporates by reference its allegations in paragraphs 1 through 52 of its Declaratory Judgment Counterclaims.

54. The claims of the 007 Patent are invalid for failure to comply with the conditions of patentability, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, and/or 115. For example, all claims of the 007 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 at least in view of WO2013/096851 ("Levner"), which discloses and/or renders obvious all elements of the claims of the 007 Patent.

55. Accordingly, a valid and justiciable controversy has arisen and exists between SG and Caltech and 10x with respect to the validity of the 007 Patent. 10x desires a judicial determination and declaration of the respective rights and duties of the parties herein. Such a determination and declaration are necessary and appropriate so that the parties may ascertain their respective rights and duties.

56. 10x is entitled to a declaratory judgment that the claims of the 007 Patent are invalid.

**COUNT IX: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 12,630,868**

57. 10x restates and incorporates by reference the denials, admissions, allegations, and defenses contained in its Answer and Defenses to Plaintiffs' Complaint against 10x as if fully set forth herein. 10x further restates and incorporates by reference its allegations in paragraphs 1 through 56 of its Declaratory Judgment Counterclaims.

58. In Count V of Plaintiffs' Complaint, SG and Caltech have expressly accused 10x of infringing the 868 Patent.

59. 10x has not been and is not now infringing, directly or indirectly, literally or under the doctrine of equivalents, or willfully, any valid and enforceable claim of the 868 Patent.

60. 10x does not infringe any valid and enforceable claims of the 868 Patent at least because neither 10x nor anyone else has used or uses 10x's products to practice each and every step of the claims of the 868 Patent. For example, neither 10x nor anyone else used or uses 10x's

Xenium Platform such that performing steps (a) to (c) in Claim 2 so that a target in the sample "is described by a barcode."

61. Additionally, each of the claims of the 868 Patent is invalid as set forth below in Count X of 10x's Declaratory Judgment Counterclaims. An invalid claim cannot be infringed.

62. In view of Count V against 10x, there is an actual controversy between SG and Caltech and 10x regarding the 868 Patent. Accordingly, a valid and justiciable controversy has arisen and exists between SG and Caltech and 10x with respect to the alleged infringement of the 868 Patent. 10x desires a judicial determination and declaration of the respective rights and duties of the parties herein. Such a determination and declaration are necessary and appropriate so that the parties may ascertain their respective rights and duties.

63. 10x is entitled to a declaratory judgment that: (a) it has not infringed and is not infringing, literally or under the doctrine of equivalents, directly or indirectly, any valid and enforceable claim of the 868 Patent; and (b) it is not liable for any alleged infringement of the 868 Patent.

## COUNT X: DECLARATORY JUDGMENT OF INVALIDITY OF THE 868 PATENT

64. 10x restates and incorporates by reference the denials, admissions, allegations, and defenses contained in its Answer and Defenses to Plaintiffs' Complaint against 10x as if fully set forth herein. 10x further restates and incorporates by reference its allegations in paragraphs 1 through 63 of its Declaratory Judgment Counterclaims.

65. The claims of the 868 Patent are invalid for failure to comply with the conditions of patentability, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, and/or 115. For example, all claims of the 868 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 at least in

view of WO2013/096851 ("Levner"), which discloses and/or renders obvious all elements of the claims of the 868 Patent.

66. Accordingly, a valid and justiciable controversy has arisen and exists between SG and Caltech and 10x with respect to the validity of the 868 Patent. 10x desires a judicial determination and declaration of the respective rights and duties of the parties herein. Such a determination and declaration are necessary and appropriate so that the parties may ascertain their respective rights and duties.

67. 10x is entitled to a declaratory judgment that the claims of the 868 Patent are invalid.

## II. PATENT INFRINGEMENT COUNTERCLAIMS

68. These are counterclaims by Counterclaim Plaintiffs 10x Genomics, Inc. and President and Fellows of Harvard College ("Harvard") (together, "Counterclaim Plaintiffs") against Counterclaim Defendant Spatial Genomics, Inc. for infringement of U.S. Patent Nos. 11,293,051 (the "051 Patent"), 11,293,052 (the "052 Patent"), 11,566,277 (the "277 Patent"), and 12,618,099 (the "099 Patent") (collectively, the "Harvard Patents"). These counterclaims arise under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. § 271.

## THE PARTIES

69. 10x is a Delaware corporation with its principal place of business at 6230 Stoneridge Mall Road, Pleasanton, CA 94588.

70. 10x is a pioneering innovator of genomics and sequencing technologies that are providing life science researchers and clinicians an unprecedented understanding of biology. By elegantly combining its proprietary hardware, chemistry, and software, 10x has developed and brought to market award-winning products that give single cell and spatial views of complex biological systems. 10x's products have enabled previously infeasible forms of research in the life

sciences in areas of critical importance to human health, including cancer research, neuroscience, immunology, infectious disease, and developmental biology.

71. Harvard is a Massachusetts non-profit educational institution with a principal place of business in Cambridge, MA and an address at 1350 Massachusetts Avenue, Cambridge, MA 02138. Harvard is the patent owner and licensor of the Harvard Patents.

72. On information and belief, Spatial Genomics is a Delaware corporation with its principal place of business in Pasadena, California.

73. SG makes, uses, sells, offers to sell, exports, and/or imports in the United States products, services, and components that have been and are used to infringe one or more claims of the Harvard Patents.

## JURISDICTION AND VENUE

74. This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the patent laws of the United States.

75. This Court has personal jurisdiction over Spatial Genomics because Spatial Genomics has consented to personal jurisdiction in this District by filing its original claims in this Court.

76. Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(b) because Spatial Genomics has consented to venue in this District by filing its original claims in this Court.

## BACKGROUND

### A. 10x's Single Cell Technologies

77. 10x is a life sciences technology company founded in 2012 in Pleasanton, California by Drs. Serge Saxonov and Benjamin Hindson. Since its inception, 10x has focused on building new technologies to enable breakthrough discoveries and accelerate the understanding of biology. To date, 10x has invested hundreds of thousands of hours and over $2 billion in research

and development to invent, design, and develop its proprietary line of products for understanding biology at unprecedented resolution and scale. 10x continues to invest significant time and money to further innovate and bring ground-breaking new products and capabilities to market.

78. In the 10-plus years since its first product launch in 2015, 10x's expanding suite of products has fueled a revolution in genomics, winning wide acclaim and commercial success. 10x has achieved an installed base of more than 8,000 instruments around the world, including at all of the top 100 global research institutions and all of the top 20 global biopharmaceutical companies. Annual sales of 10x products were approximately $600 million in each of 2024 and 2025.

79. More than 10,000 high-impact scientific articles have been published based on data generated from 10x products, including hundreds of articles in top journals *Cell*, *Science*, and *Nature*. This scientific work illustrates the use of 10x products to discover, for example: molecular mechanisms that lead to brain, breast, and lung cancers; how the immune system reacts to COVID-19 infections; and a new type of lung cell that causes cystic fibrosis. The paradigm-changing nature of 10x's products has led to numerous accolades, including these products being named to *The Scientist* magazine's Top 10 Innovations List in 2015, 2017, 2018, 2019, 2020, and 2021.

80. Since its launch in 2016, 10x's award-winning Chromium platform has been essential to enabling single cell genomics—the study of gene activity on a cell-by-cell basis. The genetic code contained in a person's DNA inside the nucleus of each cell is transcribed into a nucleic acid called messenger RNA (mRNA), which is then in turn translated into the proteins that implement the cell's biological functions. The full range of mRNA expressed in a cell is known as its "transcriptome." A cell's transcriptome can provide insight into how it is differentiated from other cells and whether it may be cancerous or otherwise disordered. The study of cellular transcriptomes is known as transcriptomics. In contrast to prior techniques, in which genetic

material from biological tissue was blended and analyzed in bulk, cell-by-cell analysis preserves the heterogeneity of cells and their transcriptomes within larger biological samples. For example, a cancer tumor can consist of a varied population of cells, some healthy and some cancerous, and the cancerous cells themselves may consist of genetically distinct subpopulations that are susceptible to different therapeutics. Prior techniques for sequencing the genomic make-up of a sample did not preserve this type of complexity, but it can be fully captured using 10x's single-cell analysis solutions such as the Chromium platform. Just two years after 10x launched the Chromium platform, *Science* magazine hailed cell-by-cell developmental analysis as the "2018 Breakthrough of the Year." *See* https://www.science.org/content/article/breakthrough-2018. The Chromium X, which launched in July 2021, enables the expansion of single-cell studies to experiments on the scale of a million cells and was named a Top 10 Innovation in 2021 by *The Scientist* magazine.

**B. 10x's Spatial Technologies**

81. 10x is also a pioneer in the field of spatial biology, which facilitates the study of gene activity in cells within their spatial context. Spatial analysis enables researchers and clinicians not only to study the varied genetic make-up of cells in a sample but also to map where in the tissue the different cells are found. The relationship between cells and their relative locations within a tissue provides insights instrumental to helping scientists gain a better understanding of biological processes and disease. For instance, in the context of cancer tumors, understanding the arrangement of cells within the tumor allows researchers to interrogate how various cellular structures contribute to tumor development, progression, and metastasis. *See* Rohit Arora et al. *Spatial transcriptomics reveals distinct and conserved tumor core and edge architectures that predict survival and targeted therapy response*, 14 Nature Comms. 5029 (2023).

82. In 2020, *Nature Methods* named spatially resolved transcriptomics its "Method of the Year" and featured 10x's spatial technology on the cover. Vivien Marx, Method of the Year: spatially resolved transcriptomics, 18 *Nature Methods* 9-14 (2021). https://doi.org/10.1038/s41592-020-01033-y. 10x's Visium Spatial Gene Expression Solution was named among *The Scientist* magazine's Top 10 Innovations in 2020. In August 2025, a survey of nearly 200 researchers within the spatial transcriptomics field identified 10x's Visium platform as number one in terms of awareness, usage, and researchers' interest. *See* Andrew P. Han, *Spatial Omics Technology Survey Reveals 'Long Tail' of Interest Across Many Platforms,* GenomeWeb (August 13, 2025), https://www.genomeweb.com/gene-expression-rna-sequencing/spatial-omics-technology-survey-reveals-long-tail-interest-across?utm_source=Sailthru&utm_medium=email&utm_campaign=GWDN%20Wed%20PM%202025-08-13&utm_term=GW%20Daily%20News%20Bulletin.

83. In 2020, 10x announced its acquisition of ReadCoor, Inc., a company founded and based on Professor George Church's work at Harvard, obtaining intellectual property, key technology advances, and deep talent and expertise in the emerging field of analyte detection and analysis in biological samples, including cell and tissue samples.

84. On December 8, 2022, 10x Genomics commercially launched its Xenium Platform, built from its investments in Harvard's technology. Xenium is a complete platform—including the Xenium Analyzer instrument, Xenium reagents and panels, Xenium Explorer software, and the full support of 10x's team of experts—designed to create spatial maps of gene expression in the original tissue at true cellular and subcellular resolutions. Researchers throughout the world use the Xenium platform to map tumor microenvironments, validate potential novel drug targets, and understand cellular organization within native tissue. For example, the Asia-Pacific Spatial

Translational Research Alliance uses custom Xenium panels to map how cancer and immune cells communicate in ten major cancer types. *See* https://investors.10xgenomics.com/news/news-details/2025/New-ASTRA-Consortium-Unites-Asia-Pacific-Scientists-to-Build-Pan-Cancer-Spatial-Atlas-Powered-by-10x-Genomics-Xenium/default.aspx; *see also* Shunsuke A. Sakai et al., *Single-cell spatial analysis with Xenium reveals anti-tumour responses*, 133 British Journal of Cancer 795-808 (2025), available at https://www.nature.com/articles/s41416-025-03088-0; Jiang Chang et al., *Single-cell multi-stage spatial evolutional map of esophageal carcinogenesis,* 43 Cancer Cell, 380-397 (March 10, 2025), available at https://www.cell.com/cancer-cell/fulltext/S1535-6108(25)00061-3.

85. On April 18, 2026, 10x announced Atera, its new spatial biology platform. *See* https://www.prnewswire.com/news-releases/10x-genomics-introduces-atera-a-new-platform-to-redefine-how-biology-is-measured-and-understood-302746542.html; https://www.genengnews.com/topics/omics/10x-genomics-unveils-atera-spatial-platform-at-aacr-meeting/. The Atera platform includes an all-in-one instrument for sample imaging, liquid handling, hardware stabilization, and onboard analysis. It enables 800 whole transcriptome samples per year, a 500mm$^2$ imageable area per slide, and 4 slides per instrument run. Users can choose from Atera WTA that allows for analysis of 18,000 genes or Atera Select 1,000 custom gene panels with optional stacking of up to two 1,000-gene panels. *See* https://assets.10xgenomics.com/asset/1d68f7e0-22f3-42e6-a5d2-a8822e10694e/10x_LIT000613_Atera_Product_Sheet_Letter_Digital_RevA.pdf; https://www.10xgenomics.com/platforms/atera.

86. 10x's Atera platform has already won praise from early access users, including researchers using Atera to study rare glioblastoma samples, and researchers who used Atera to

study how colorectal cancers interact with the immune microenvironment. *See* https://www.prnewswire.com/news-releases/10x-genomics-introduces-atera-a-new-platform-to-redefine-how-biology-is-measured-and-understood-302746542.html; https://www.genengnews.com/topics/omics/10x-genomics-unveils-atera-spatial-platform-at-aacr-meeting/.

**C. Spatial Genomics' Infringing GenePS Platform**

87. On information and belief, Spatial Genomics, Inc. was founded in 2016. Spatial Genomics offers the GenePS Platform, which is purportedly based on the sequential fluorescence in situ hybridization (seqFISH) technology. Spatial Genomics claims that seqFISH "makes it easy to image and decode complex molecular identities and locations directly within single cells and intact tissue microenvironments" and "offers the capability to determine cell types, states, and relationships by detecting and identifying dozens to tens of thousands of biomolecules while preserving intact single cells and spatial tissue organization." *See* https://spatialgenomics.com/technology/. The GenePS Platform includes "automated instruments, reagents, and analysis software." *See* https://spatialgenomics.com/product/.

88. On information and belief, the GenePS Platform employs a workflow in which "[t]ranscripts are uniquely identified by a fluorescent barcode built up over multiple images, using a resilient error-correcting barcode strategy that efficiently detects up to thousands of genes." *See* https://spatialgenomics.com/wp-content/uploads/2023/05/CR000007RevD_SpatialGenomics_OnePager-1.pdf. The GenePS Platform supports the analysis of RNA and protein molecules in fixed cell or tissue samples. *Id.*

89. On information and belief, Spatial Genomics announced the official release of GenePS in May 2023. https://www.genomeweb.com/new-products/spatial-genomics-gene-positioning-system-geneps/607346; https://lnkd.in/p/gjirVWv3.

90. Spatial Genomics advertises, offers for sale, and sells, ships, and installs the GenePS platform to and for customers in the United States. *See* https://spatialgenomics.com/product/. Spatial Genomics' employees, customers, collaborators, and partners have practiced and continue to practice (with Spatial Genomics' knowledge) one or more claims of the Harvard Patents by using the accused GenePS platform. *See, e.g.*, Wang et al., "A spatially coordinated keratinocyte-fibroblast Circuit recruits MMP9+ myeloid cells to drive type I interferon-driven inflammation in photosensitive autoimmunity," https://www.nature.com/articles/s41590-026-02502-w. Spatial Genomics further works with or sells the GenePS Platform to core labs and laboratory service companies including the Children's Hospital of Los Angeles and Fulgent Genetics (one of the investors of Spatial Genomics) that offer to perform the workflow of the GenePS Platform as a service to their customers and provide customers with the raw data and analyzed results. https://www.chla.org/research/core/spatial-biology-and-genomics/equipment-and-services; https://www.fulgentgenetics.com/content/flyer/FLY-Fulgent_BioPharma_Services-V1.pdf; https://ir.fulgentgenetics.com/news-releases/news-release-details/fulgent-genetics-announces-strategic-investment-spatial-genomics.

91. The "SG Accused Instrumentalities" are all products, components, and services that are made, used, performed, offered for sale, sold, imported into the United States and/or supplied from the United States by or on behalf of Spatial Genomics in connection with Spatial Genomics' GenePS Platform and workflow. The SG Accused Instrumentalities include, for example without limitation, instruments, software, reagents, and consumables used by or provided by Spatial Genomics in connection with its GenePS Platform.

**D. The Harvard Patents**

92. Through the development and subsequent making, using, selling, offering for sale, and/or importing of the SG Accused Instrumentalities, Spatial Genomics has and continues to infringe the Harvard Patents:

(a) U.S. Patent No. 11,293,051, entitled "Compositions and Methods For Analyte Detection" (Ex. A); and

(b) U.S. Patent No. 11,293,052, entitled "Compositions and Methods For Analyte Detection" (Ex. B).

(c) U.S. Patent No. 11,566,277, entitled "Compositions and Methods For Analyte Detection" (Ex. C).

(d) U.S. Patent No. 12,618,099, entitled "Compositions and Methods For Analyte Detection" (Ex. D).

93. The 051 Patent was duly and legally issued on April 5, 2022, by the United States Patent and Trademark Office. U.S. Application No. 17/238,642, which issued as the 051 Patent, claims the benefit of Application No. PCT/US2012/071398, filed on December 21, 2012; Provisional Application No. 61/777,383, filed on March 12, 2013; and Provisional Application No. 61/579,265, filed on December 22, 2011. George M. Church, Jehyuk Lee, Daniel Levner, and Michael Super are named inventors of the 051 Patent.

94. Harvard is the sole legal owner of the 051 Patent. A true and correct copy of the assignment record of the 051 Patent is attached as Exhibit E. The 051 Patent is exclusively licensed to 10x, including *inter alia* the right to sue Spatial Genomics for its acts of infringement and to recover damages therefrom.

95. The 052 Patent was duly and legally issued on April 5, 2022, by the United States Patent and Trademark Office. U.S. Application No. 17/238,682, which issued as the 052 Patent,

claims the benefit of Application No. PCT/US2012/071398, filed on December 21, 2012; Provisional Application No. 61/777,383, filed on March 12, 2013; and Provisional Application No. 61/579,265, filed on December 22, 2011. George M. Church, Jehyuk Lee, Daniel Levner, and Michael Super are named inventors of the 052 Patent.

96. Harvard is the sole legal owner of the 052 Patent. A true and correct copy of the assignment record of the 052 Patent is attached as Exhibit E. The 052 Patent is exclusively licensed to 10x, including *inter alia* the right to sue Spatial Genomics for its acts of infringement and to recover damages therefrom.

97. The 277 Patent was duly and legally issued on January 31, 2023, by the United States Patent and Trademark Office. U.S. Application No. 17/671,803, which issued as the 277 Patent, claims the benefit of Application No. PCT/US2012/071398, filed on December 21, 2012; Provisional Application No. 61/777,383, filed on March 12, 2013; and Provisional Application No. 61/579,265, filed on December 22, 2011. George M. Church, Jehyuk Lee, Daniel Levner, and Michael Super are named inventors of the 277 Patent.

98. Harvard is the sole legal owner of the 277 Patent. A true and correct copy of the assignment record of the 277 Patent is attached as Exhibit F. The 277 Patent is exclusively licensed to 10x, including *inter alia* the right to sue Spatial Genomics for its acts of infringement and to recover damages therefrom.

99. The 099 Patent was duly and legally issued on May 5, 2026, by the United States Patent and Trademark Office. U.S. Application No. 18/936,042, which issued as the 099 Patent, claims the benefit of Application No. PCT/US2012/071398, filed on December 21, 2012, Provisional Application No. 61/579,265 filed Dec. 22, 2011, and Provisional Application No.

61/777,383, filed on Mar. 12, 2013. George M. Church, Jehyuk Lee, Daniel Levner, and Michael Super are named inventors of the 099 Patent.

100. Harvard is the sole legal owner of the 099 Patent. A true and correct copy of the assignment record of the 099 Patent is attached as Exhibit G. The 099 Patent is exclusively licensed to 10x, including *inter alia* the right to sue Spatial Genomics for its acts of infringement and to recover damages therefrom.

**COUNT XI: INFRINGEMENT OF U.S. PATENT NO. 11,293,051**

101. Counterclaim Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-100 as if fully set forth herein.

102. Spatial Genomics has infringed and continues to infringe one or more claims of the 051 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the United States without authority the SG Accused Instrumentalities and/or components thereof. Attachment AA provides an exemplary infringement claim chart for one asserted claim and exemplary and/or representative SG Accused Instrumentalities.

103. On information and belief, Spatial Genomics was aware of or acted with willful blindness to the existence of the 051 Patent and the infringement of the 051 Patent by itself and third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. Spatial Genomics knew, should have known, or was willfully blind to the existence of the 051 Patent and that the conduct identified herein would result in the infringement of one or more claims of the 051 Patent. ***First***, 10x asserted the 051 Patent in two other litigations involving platforms for analysis of analytes in cell or tissue samples. *See 10x Genomics, Inc. v. NanoString Technologies, Inc.*, 1:22-cv-00261-MFK (D. Del.) ("NanoString-261 Case") and *10x Genomics, Inc. v. Vizgen, Inc.*, 1:22-cv-00595-MFK (D. Del.) ("Vizgen-595

Case"). Both the NanoString-261 and Vizgen-595 Cases were widely known in spatial biology. *See, e.g.*, Andrew P. Han, 10x Genomics Sues NanoString, Vizgen Over Spatial Gene Expression Analysis Technologies, GenomeWeb, May 10, 2022, available at https://www.genomeweb.com/business-news/10x-genomics-sues-nanostring-vizgen-over-spatial-gene-expression-analysis. ***Second***, 10x had also asserted a parent patent to the 051 Patent (U.S. Patent No. 10,227,639 ("the 639 Patent")) in the NanoString-261 Case, and the European counterpart of the 639 patent (EP4108782) was at issue at the Unified Patent Court when 10x sought a preliminary injunction, which was highly publicized and well known in the genomics field as it was the first lawsuit filed in that Court. *See* "10x Genomics Files Two New Lawsuits Requesting Preliminary Injunctions Against NanoString's CosMx Products," PR Newswire, dated June 1, 2023, available at https://www.prnewswire.com/news-releases/10x-genomics-files-two-new-lawsuits-requesting-preliminary-injunctions-against-nanostrings-cosmx-products-301839927.html; "10x Wins Injunction From Unified Patent Court Banning Sales of NanoString's CosMx Products in Europe," Biospace, Sept. 19, 2023, available at https://www.biospace.com/10x-wins-injunction-from-unified-patent-court-banning-sales-of-nanostring-s-cosmx-products-in-europe. On May 17, 2023, the German Patent Court issued a permanent injunction against NanoString's CosMx products based on EP 2794928B1, a European counterpart that shares the same specification as the Asserted Harvard Patents. https://www.prnewswire.com/news-releases/10x-genomics-wins-permanent-injunction-against-nanostrings-cosmx-products-301827779.html. ***Third***, on January 26, 2024, 10x served a document and deposition subpoena on Professor Long Cai in the Vizgen-595 Case. Professor Long Cai is one of the co-founders of Spatial Genomics, and when the subpoena was served on him, he had maintained his role at Spatial Genomics at the time. On April 24, 2024, 10x's counsel deposed

Professor Long Cai. ***Fourth***, 10x has also asserted patents from the same family as the Harvard Patents asserted in this case in *10x Genomics, Inc. v. Element Biosciences, Inc.*, 1:26-cv-00538-MN (D. Del.) (the "Element-538 Case"). This case is widely known in spatial biology. *See* Huanjia Zhang, 10x Genomics Sues Element Biosciences for Patent Infringement, GenomeWeb, May 8, 2026, available at https://www.genomeweb.com/business-news/10x-genomics-sues-element-biosciences-patent-infringement/. ***Fifth***, the 224, 007, and 868 Patents asserted by Spatial Genomics and Caltech in this case cite WO2013/096851, which is the publication for PCT/US2012/071398, one of the parent applications of the 051 Patent. The 224, 007, and 868 Patents cited Levner during prosecution, including in the Oct. 9, 2024 Information Disclosure Statement by the applicant in the 224 Patent file history and in the Dec. 5, 2023 Information Disclosure Statements by the applicant in the 007 and 868 Patent file histories. The Church 851 application was also cited in the opposition proceeding against EP2992115 (European counterpart of the Asserted Caltech patents) on June 14, 2023, shortly after 10x filed the UPC actions for preliminary injunctions (June 1, 2023) and the German court issued the permanent injunction based on the Harvard patent (May 17, 2023).

104. Spatial Genomics, without authority and with knowledge of the 051 Patent, has actively induced and continues to actively induce infringement of one or more claims of the 051 Patent under 35 U.S.C. § 271(b) by making and selling the SG Accused Instrumentalities in the United States and intentionally instructing and otherwise encouraging others, including Spatial Genomics' customers and end users such as scientists working at laboratories that purchase the SG Accused Instrumentalities, to use the SG Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 051 Patent, including as described in Attachment AA. Spatial Genomics' active inducement of others' infringement began no later than its first

shipment and/or first installation of the SG Accused Instrumentalities to one of its customers, end users, partners, or collaborators, which, on information and belief, occurred in 2023. *See* D.I. 1, ¶ 11. On information and belief, the first direct infringement of the 051 Patent by Spatial Genomics' employees, customers, end users, partners, or collaborators occurred before May 2023. On information and belief, one or more of Spatial Genomics' customers and end users of the SG Accused Instrumentalities have directly infringed and continue to directly infringe the 051 Patent by using the SG Accused Instrumentalities in accordance with Spatial Genomics' instructions and encouragement. Spatial Genomics' instruction and encouragement include, for example, distributing the documentation cited in Attachment AA, as well as user guides, published articles, and other customer-facing materials; providing instrument and software updates; and customer support via email or phone. Spatial Genomics provides this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so results in the infringement of one or more method claims of the 051 Patent by those customers and end users and/or in their performing each step of one or more methods recited in those claims. As explained below, on information and belief, Spatial Genomics acts knowingly and/or with willful blindness as to the existence of the 051 Patent and of its own infringement and the infringement by others as a result of the litigations between 10x and Vizgen, NanoString, and Element.

105. Spatial Genomics, since at least its first shipment or commercial installation of the GenePS platform in 2023, has contributed and continues to contribute to the infringement by others of one or more claims of the 051 Patent pursuant to 35 U.S.C. § 271(c) by importing, selling, and/or offering for sale in the United States without authority the SG Accused Instrumentalities and/or components thereof specifically so that the SG Accused Instrumentalities will be used in an infringing manner by others, including use as described in Attachment AA by Spatial Genomics'

customers and end users. One or more of Spatial Genomics' customers and end users of the SG Accused Instrumentalities have directly infringed and continue to directly infringe the 051 Patent by using the SG Accused Instrumentalities in accordance with Spatial Genomics' instructions and encouragement. Attachment AA. The GenePS Platform and its components, including specifically the instruments and reagents, were designed specifically to be used in a manner that infringes the asserted claims of the 051 Patent. Moreover, as shown in Spatial Genomics' product literature, there is no other substantial use for the GenePS platform and its components. The instruments and reagents are a material part of the claimed inventions of the 051 Patent that result in infringement when used. As a result of Spatial Genomics' selling and/or offering for sale of the GenePS Platform and its components, other entities on information and belief use these products for their intended purposes and according to Spatial Genomics' instructions and installation with the result that such entities, such as Spatial Genomics' customers and users of the SG Accused Instrumentalities, directly infringe the asserted claims of the 051 Patent, literally or under the doctrine of equivalents, for the reasons stated above and in Attachment AA. As explained below, on information and belief, Spatial Genomics acts knowingly and/or with willful blindness as to the existence of the 051 Patent and as to the fact that at least the GenePS instruments and reagents are especially made and adapted for use in an infringing manner, are not staple articles of commerce, and do not have non-infringing uses.

106. Counterclaim Plaintiffs have suffered and continue to suffer damages as a result of Spatial Genomics' infringement of the 051 Patent.

107. The infringement of the 051 Patent by Spatial Genomics has been, and continues to be, willful and deliberate. At least as of April 24, 2024, if not earlier, Spatial Genomics knew or should have known that its actions did and would constitute an unjustifiably high risk of

infringement of the 051 Patent. Such conduct constitutes, at minimum, willful infringement of the 051 Patent, justifying an award of treble damages pursuant to 35 U.S.C. § 284.

108. Unless Spatial Genomics is enjoined from infringing the 051 Patent, Spatial Genomics' efforts to design, develop, market, offer to sell, and sell the SG Accused Instrumentalities will cause Counterclaim Plaintiffs to suffer irreparable injury for which damages are an inadequate remedy.

**COUNT XII: INFRINGEMENT OF U.S. PATENT NO. 11,293,052**

109. Counterclaim Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-108 as if fully set forth herein.

110. Spatial Genomics has infringed and continues to infringe one or more claims of the 052 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the United States without authority the SG Accused Instrumentalities and/or components thereof. Attachment BB provides an exemplary infringement claim chart for one asserted claim and exemplary and/or representative SG Accused Instrumentalities.

111. On information and belief, Spatial Genomics was aware of or acted with willful blindness to the existence of the 052 Patent and the infringement of the 052 Patent by itself and third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. Spatial Genomics knew, should have known, or was willfully blind to the existence of the 052 Patent and that the conduct identified herein would result in the infringement of one or more claims of the 052 Patent. ***First***, 10x asserted the 052 Patent in two other litigations involving platforms for analysis of analytes in cell or tissue samples. *See 10x Genomics, Inc. v. NanoString Technologies, Inc.*, 1:22-cv-00261-MFK (D. Del.) ("NanoString-261 Case") and *10x Genomics, Inc. v. Vizgen, Inc.*, 1:22-cv-00595-MFK (D. Del.) ("Vizgen-595

Case"). Both the NanoString-261 and Vizgen-595 Cases were widely known in spatial biology. *See, e.g.*, Andrew P. Han, 10x Genomics Sues NanoString, Vizgen Over Spatial Gene Expression Analysis Technologies, GenomeWeb, May 10, 2022, available at https://www.genomeweb.com/business-news/10x-genomics-sues-nanostring-vizgen-over-spatial-gene-expression-analysis. ***Second***, 10x had also asserted a parent patent to the 052 Patent (U.S. Patent No. 10,227,639 ("the 639 Patent")), and the European counterpart of the 639 patent (EP4108782) was at issue at the Unified Patent Court when 10x sought a preliminary injunction, which was highly publicized and well known in the genomics field as it was the first lawsuit filed in that Court. *See* "10x Genomics Files Two New Lawsuits Requesting Preliminary Injunctions Against NanoString's CosMx Products," PR Newswire, dated June 1, 2023, available at https://www.prnewswire.com/news-releases/10x-genomics-files-two-new-lawsuits-requesting-preliminary-injunctions-against-nanostrings-cosmx-products-301839927.html; "10x Wins Injunction From United Patent Court Banning Sales of NanoString's CosMx Products in Europe," Biospace, Sept. 19, 2023, available at https://www.biospace.com/10x-wins-injunction-from-unified-patent-court-banning-sales-of-nanostring-s-cosmx-products-in-europe. On May 17, 2023, the German Patent Court issued a permanent injunction against NanoString's CosMx products based on EP 2794928B1, a European counterpart that shares the same specification as the Asserted Harvard Patents. https://www.prnewswire.com/news-releases/10x-genomics-wins-permanent-injunction-against-nanostrings-cosmx-products-301827779.html. ***Third***, on January 26, 2024, 10x served a document and deposition subpoena on Professor Long Cai in the Vizgen-595 Case. Professor Long Cai is one of the co-founders of Spatial Genomics, and when the subpoena was served on him, he had maintained his role at Spatial Genomics at the time. On April 24, 2024, 10x's counsel deposed Professor Long Cai. ***Fourth***, 10x has also asserted patents from the same

family as the Harvard Patents asserted in this case in *10x Genomics, Inc. v. Element Biosciences, Inc.*, 1:26-cv-00538-MN (D. Del.) (the "Element-538 Case"). This case is widely known in spatial biology. *See* Huanjia Zhang, 10x Genomics Sues Element Biosciences for Patent Infringement, GenomeWeb, May 8, 2026, available at https://www.genomeweb.com/business-news/10x-genomics-sues-element-biosciences-patent-infringement/. ***Fifth***, the 224, 007, and 868 Patents asserted by Spatial Genomics and Caltech in this case cite WO2013/096851, which is the publication for PCT/US2012/071398, one of the parent applications of the 052 Patent. The 224, 007, and 868 Patents cited Levner during prosecution, including in the Oct. 9, 2024 Information Disclosure Statement by the applicant in the 224 Patent file history and in the Dec. 5, 2023 Information Disclosure Statements by the applicant in the 007 and 868 Patent file histories. The Church 851 application was also cited in the opposition proceeding against EP2992115 (European counterpart of the Asserted Caltech patents) on June 14, 2023, shortly after 10x filed the UPC actions for preliminary injunctions (June 1, 2023) and the German court issued the permanent injunction based on the Harvard patent (May 17, 2023).

112. Spatial Genomics, without authority and with knowledge of the 052 Patent, has actively induced and continues to actively induce infringement of one or more claims of the 052 Patent under 35 U.S.C. § 271(b) by making and selling the SG Accused Instrumentalities in the United States and intentionally instructing and otherwise encouraging others, including Spatial Genomics' customers and end users such as scientists working at laboratories that purchase the SG Accused Instrumentalities, to use the SG Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 052 Patent, including as described in Attachment BB. Spatial Genomics' active inducement of others' infringement began no later than its first shipment and/or first installation of the SG Accused Instrumentalities to one of its customers, end

users, partners, or collaborators, which, on information and belief, occurred in 2023. *See* D.I. 1, ¶ 11. On information and belief, the first direct infringement of the 052 Patent by Spatial Genomics' employees, customers, end users, partners, or collaborators occurred before May 2023. On information and belief, one or more of Spatial Genomics' customers and end users of the SG Accused Instrumentalities have directly infringed and continue to directly infringe the 052 Patent by using the SG Accused Instrumentalities in accordance with Spatial Genomics' instructions and encouragement. Spatial Genomics' instruction and encouragement include, for example, distributing the documentation cited in Attachment BB, as well as user guides, published articles, and other customer-facing materials; providing instrument and software updates; and customer support via email or phone. Spatial Genomics provides this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so results in the infringement of one or more method claims of the 052 Patent by those customers and end users and/or in their performing each step of one or more methods recited in those claims. As explained below, on information and belief, Spatial Genomics acts knowingly and/or with willful blindness as to the existence of the 052 Patent and of its own infringement and the infringement by others as a result of the litigations between 10x and Vizgen, NanoString, and Element.

113. Spatial Genomics, since at least its first shipment or commercial installation of the GenePS platform in 2023, has contributed and continues to contribute to the infringement by others of one or more claims of the 052 Patent pursuant to 35 U.S.C. § 271(c) by importing, selling, and/or offering for sale in the United States without authority the SG Accused Instrumentalities and/or components thereof specifically so that the SG Accused Instrumentalities will be used in an infringing manner by others, including use as described in Attachment BB by Spatial Genomics' customers and end users. One or more of Spatial Genomics' customers and end users of the SG

Accused Instrumentalities have directly infringed and continue to directly infringe the 052 Patent by using the SG Accused Instrumentalities in accordance with Spatial Genomics' instructions and encouragement. Attachment BB. The GenePS Platform and its components, including specifically the instruments and reagents, were designed specifically to be used in a manner that infringes the asserted claims of the 052 Patent. Moreover, as shown in Spatial Genomics' product literature, there is no other substantial use for the GenePS platform and its components. The instruments and reagents are a material part of the claimed inventions of the 052 Patent that result in infringement when used. As a result of Spatial Genomics' selling and/or offering for sale of the GenePS Platform and its components, other entities on information and belief use these products for their intended purposes and according to Spatial Genomics' instructions and installation with the result that such entities, such as Spatial Genomics' customers and users of the SG Accused Instrumentalities, directly infringe the asserted claims of the 052 Patent, literally or under the doctrine of equivalents, for the reasons stated above and in Attachment BB. As explained below, on information and belief, Spatial Genomics acts knowingly and/or with willful blindness as to the existence of the 052 Patent and as to the fact that at least the GenePS instruments and reagents are especially made and adapted for use in an infringing manner, are not staple articles of commerce, and do not have non-infringing uses.

114. Counterclaim Plaintiffs have suffered and continue to suffer damages as a result of Spatial Genomics' infringement of the 052 Patent.

115. The infringement of the 052 Patent by Spatial Genomics has been, and continues to be, willful and deliberate. At least as of April 24, 2024, if not earlier, Spatial Genomics knew or should have known that its actions did and would constitute an unjustifiably high risk of

infringement of the 052 Patent. Such conduct constitutes, at minimum, willful infringement of the 052 Patent, justifying an award of treble damages pursuant to 35 U.S.C. § 284.

116. Unless Spatial Genomics is enjoined from infringing the 052 Patent, Spatial Genomics' efforts to design, develop, market, offer to sell, and sell the SG Accused Instrumentalities will cause Counterclaim Plaintiffs to suffer irreparable injury for which damages are an inadequate remedy.

**COUNT XIII: INFRINGEMENT OF U.S. PATENT NO. 11,566,277**

117. Counterclaim Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-116 as if fully set forth herein.

118. Spatial Genomics has infringed and continues to infringe one or more claims of the 277 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the United States without authority the SG Accused Instrumentalities and/or components thereof. Attachment CC provides an exemplary infringement claim chart for one asserted claim and exemplary and/or representative SG Accused Instrumentalities.

119. On information and belief, Spatial Genomics was aware of or acted with willful blindness to the existence of the 277 Patent and the infringement of the 277 Patent by itself and third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. Spatial Genomics knew, should have known, or was willfully blind to the existence of the 277 Patent and that the conduct identified herein would result in the infringement of one or more claims of the 277 Patent. ***First***, 10x has asserted the 277 Patent in *10x Genomics, Inc. v. Element Biosciences, Inc.*, 1:26-cv-00538-MN (D. Del.) (the "Element-538 Case"). This case is widely known in spatial biology. *See* Huanjia Zhang, 10x Genomics Sues Element Biosciences for Patent Infringement, GenomeWeb, May 8, 2026, available at

https://www.genomeweb.com/business-news/10x-genomics-sues-element-biosciences-patent-infringement/. ***Second***, 10x asserted the parent patent to the 277 Patent (the 737 Patent) in two other litigations involving platforms for analysis of analytes in cell or tissue samples. *See 10x Genomics, Inc. v. NanoString Technologies, Inc.*, 1:22-cv-00261-MFK (D. Del.) ("NanoString-261 Case") and *10x Genomics, Inc. v. Vizgen, Inc.*, 1:22-cv-00595-MFK (D. Del.) ("Vizgen-595 Case"). Both the NanoString-261 and Vizgen-595 Cases were widely known in spatial biology. *See, e.g.*, Andrew P. Han, 10x Genomics Sues NanoString, Vizgen Over Spatial Gene Expression Analysis Technologies, GenomeWeb, May 10, 2022, available at https://www.genomeweb.com/business-news/10x-genomics-sues-nanostring-vizgen-over-spatial-gene-expression-analysis; "10x Wins Injunction From United Patent Court Banning Sales of NanoString's CosMx Products in Europe," Biospace, Sept. 19, 2023, available at https://www.biospace.com/10x-wins-injunction-from-unified-patent-court-banning-sales-of-nanostring-s-cosmx-products-in-europe. On May 17, 2023, the German Patent Court issued a permanent injunction against NanoString's CosMx products based on EP 2794928B1, a European counterpart that shares the same specification as the Asserted Harvard Patents. https://www.prnewswire.com/news-releases/10x-genomics-wins-permanent-injunction-against-nanostrings-cosmx-products-301827779.html. ***Third***, 10x had also asserted a parent patent to the 277 Patent (U.S. Patent No. 10,227,639 ("the 639 Patent")) in the NanoString-261 Case, and the European counterpart of the 639 patent (EP4108782) was at issue at the Unified Patent Court when 10x sought a preliminary injunction, which was highly publicized and well known in the genomics field as it was the first lawsuit filed in that Court. *See* "10x Genomics Files Two New Lawsuits Requesting Preliminary Injunctions Against NanoString's CosMx Products," PR Newswire, dated June 1, 2023, available at https://www.prnewswire.com/news-releases/10x-genomics-files-two-

new-lawsuits-requesting-preliminary-injunctions-against-nanostrings-cosmx-products-301839927.html. ***Fourth***, on January 26, 2024, 10x served a document and deposition subpoena on Professor Long Cai in the Vizgen-595 Case. Professor Long Cai is one of the co-founders of Spatial Genomics, and when the subpoena was served on him, he had maintained his role at Spatial Genomics at the time. On April 24, 2024, 10x's counsel deposed Professor Long Cai. ***Fifth***, the 224, 007, and 868 Patents asserted by Spatial Genomics and Caltech in this case cite WO2013/096851, which is the publication for PCT/US2012/071398, one of the parent applications for the 277 Patent. The 224, 007, and 868 Patents cited Levner during prosecution, including in the Oct. 9, 2024 Information Disclosure Statement by the applicant in the 224 Patent file history and in the Dec. 5, 2023 Information Disclosure Statements by the applicant in the 007 and 868 Patent file histories. The Church 851 application was also cited in the opposition proceeding against EP2992115 (European counterpart of the Asserted Caltech patents) on June 14, 2023, shortly after 10x filed the UPC actions for preliminary injunctions (June 1, 2023) and the German court issued the permanent injunction based on the Harvard patent (May 17, 2023).

120. Spatial Genomics, without authority and with knowledge of the 277 Patent, has actively induced and continues to actively induce infringement of one or more claims of the 277 Patent under 35 U.S.C. § 271(b) by making and selling the SG Accused Instrumentalities in the United States and intentionally instructing and otherwise encouraging others, including Spatial Genomics' customers and end users such as scientists working at laboratories that purchase the SG Accused Instrumentalities, to use the SG Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 277 Patent, including as described in Attachment CC. Spatial Genomics' active inducement of others' infringement began no later than its first shipment and/or first installation of the SG Accused Instrumentalities to one of its customers, end

users, partners, or collaborators, which, on information and belief, occurred in 2023. *See* D.I. 1, ¶ 11. On information and belief, the first direct infringement of the 277 Patent by Spatial Genomics' employees, customers, end users, partners, or collaborators occurred before May 2023. On information and belief, one or more of Spatial Genomics' customers and end users of the SG Accused Instrumentalities have directly infringed and continue to directly infringe the 277 Patent by using the SG Accused Instrumentalities in accordance with Spatial Genomics' instructions and encouragement. Spatial Genomics' instruction and encouragement include, for example, distributing the documentation cited in Attachment CC, as well as user guides, published articles, and other customer-facing materials; providing instrument and software updates; and customer support via email or phone. Spatial Genomics provides this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so results in the infringement of one or more method claims of the 277 Patent by those customers and end users and/or in their performing each step of one or more methods recited in those claims. As explained below, on information and belief, Spatial Genomics acts knowingly and/or with willful blindness as to the existence of the 277 Patent and of its own infringement and the infringement by others as a result of the litigations between 10x and Vizgen, NanoString, and Element.

121. Spatial Genomics, since at least its first shipment or commercial installation of the GenePS platform in 2023, has contributed and continues to contribute to the infringement by others of one or more claims of the 277 Patent pursuant to 35 U.S.C. § 271(c) by importing, selling, and/or offering for sale in the United States without authority the SG Accused Instrumentalities and/or components thereof specifically so that the SG Accused Instrumentalities will be used in an infringing manner by others, including use as described in Attachment CC by Spatial Genomics' customers and end users. One or more of Spatial Genomics' customers and end users of the SG

Accused Instrumentalities have directly infringed and continue to directly infringe the 277 Patent by using the SG Accused Instrumentalities in accordance with Spatial Genomics' instructions and encouragement. Attachment CC. The GenePS Platform and its components, including specifically the instruments and reagents, were designed specifically to be used in a manner that infringes the asserted claims of the 277 Patent. Moreover, as shown in Spatial Genomics' product literature, there is no other substantial use for the GenePS platform and its components. The instruments and reagents are a material part of the claimed inventions of the 277 Patent that result in infringement when used. As a result of Spatial Genomics' selling and/or offering for sale of the GenePS Platform and its components, other entities on information and belief use these products for their intended purposes and according to Spatial Genomics' instructions and installation with the result that such entities, such as Spatial Genomics' customers and users of the SG Accused Instrumentalities, directly infringe the asserted claims of the 277 Patent, literally or under the doctrine of equivalents, for the reasons stated above and in Attachment CC. As explained below, on information and belief, Spatial Genomics acts knowingly and/or with willful blindness as to the existence of the 277 Patent and as to the fact that at least the GenePS instruments and reagents are especially made and adapted for use in an infringing manner, are not staple articles of commerce, and do not have non-infringing uses.

122. Counterclaim Plaintiffs have suffered and continue to suffer damages as a result of Spatial Genomics' infringement of the 277 Patent.

123. The infringement of the 277 Patent by Spatial Genomics has been, and continues to be, willful and deliberate. At least as of April 24, 2024, if not earlier, Spatial Genomics knew or should have known that its actions did and would constitute an unjustifiably high risk of

infringement of the 277 Patent. Such conduct constitutes, at minimum, willful infringement of the 277 Patent, justifying an award of treble damages pursuant to 35 U.S.C. § 284.

124. Unless Spatial Genomics is enjoined from infringing the 277 Patent, Spatial Genomics' efforts to design, develop, market, offer to sell, and sell the SG Accused Instrumentalities will cause Counterclaim Plaintiffs to suffer irreparable injury for which damages are an inadequate remedy.

**COUNT XIV: INFRINGEMENT OF U.S. PATENT NO. 12,618,099**

125. Counterclaim Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-124 as if fully set forth herein.

126. Spatial Genomics has infringed and continues to infringe one or more claims of the 099 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the United States without authority the SG Accused Instrumentalities and/or components thereof. Attachment DD provides an exemplary infringement claim chart for one asserted claim and exemplary and/or representative SG Accused Instrumentalities.

127. On information and belief, Spatial Genomics was aware of or acted with willful blindness to the existence of the 099 Patent and the infringement of the 099 Patent by itself and third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. Spatial Genomics knew, should have known, or was willfully blind to the existence of the 099 Patent and that the conduct identified herein would result in the infringement of one or more claims of the 099 Patent. ***First***, 10x asserted the parent patents to the 099 Patent (e.g., the 051 Patent and U.S. Patent No. 11,021,737) in other litigations involving platforms for analysis of analytes in cell or tissue samples. *See 10x Genomics, Inc. v. NanoString Technologies, Inc.*, 1:22-cv-00261-MFK (D. Del.) ("NanoString-261 Case") and *10x Genomics,*

*Inc. v. Vizgen, Inc.*, 1:22-cv-00595-MFK (D. Del.) ("Vizgen-595 Case"). Both the NanoString-261 and Vizgen-595 Cases were widely known in spatial biology. *See, e.g.*, Andrew P. Han, 10x Genomics Sues NanoString, Vizgen Over Spatial Gene Expression Analysis Technologies, GenomeWeb, May 10, 2022, available at https://www.genomeweb.com/business-news/10x-genomics-sues-nanostring-vizgen-over-spatial-gene-expression-analysis. ***Second***, 10x had also asserted a parent patent to the 099 Patent (U.S. Patent No. 10,227,639 ("the 639 Patent")) in the NanoString-261 Case, and the European counterpart of the 639 patent (EP4108782) was at issue at the Unified Patent Court when 10x sought a preliminary injunction, which was highly publicized and well known in the genomics field as it was the first lawsuit filed in that Court. *See* "10x Genomics Files Two New Lawsuits Requesting Preliminary Injunctions Against NanoString's CosMx Products," PR Newswire, dated June 1, 2023, available at https://www.prnewswire.com/news-releases/10x-genomics-files-two-new-lawsuits-requesting-preliminary-injunctions-against-nanostrings-cosmx-products-301839927.html; "10x Wins Injunction From United Patent Court Banning Sales of NanoString's CosMx Products in Europe," Biospace, Sept. 19, 2023, available at https://www.biospace.com/10x-wins-injunction-from-unified-patent-court-banning-sales-of-nanostring-s-cosmx-products-in-europe. On May 17, 2023, the German Patent Court issued a permanent injunction against NanoString's CosMx products based on EP 2794928B1, a European counterpart that shares the same specification as the Asserted Harvard Patents. https://www.prnewswire.com/news-releases/10x-genomics-wins-permanent-injunction-against-nanostrings-cosmx-products-301827779.html. ***Third***, on January 26, 2024, 10x served a document and deposition subpoena on Professor Long Cai in the Vizgen-595 Case. Professor Long Cai is one of the co-founders of Spatial Genomics, and when the subpoena was served on him, he had maintained his role at Spatial Genomics at the time. On April 24, 2024,

10x's counsel deposed Professor Long Cai. ***Fourth***, 10x has also asserted patents from the same family as the Harvard Patents asserted in this case in *10x Genomics, Inc. v. Element Biosciences, Inc.*, 1:26-cv-00538-MN (D. Del.) (the "Element-538 Case"). This case is widely known in spatial biology. *See* Huanjia Zhang, 10x Genomics Sues Element Biosciences for Patent Infringement, GenomeWeb, May 8, 2026, available at https://www.genomeweb.com/business-news/10x-genomics-sues-element-biosciences-patent-infringement/. ***Fifth***, the 224, 007, and 868 Patents asserted by Spatial Genomics and Caltech in this case cite WO2013/096851, which is the publication for PCT/US2012/071398, one of the parent applications for the 099 Patent. The 224, 007, and 868 Patents cited Levner during prosecution, including in the Oct. 9, 2024 Information Disclosure Statement by the applicant in the 224 Patent file history and in the Dec. 5, 2023 Information Disclosure Statements by the applicant in the 007 and 868 Patent file histories. The Church 851 application was also cited in the opposition proceeding against EP2992115 (European counterpart of the Asserted Caltech patents) on June 14, 2023, shortly after 10x filed the UPC actions for preliminary injunctions (June 1, 2023) and the German court issued the permanent injunction based on the Harvard patent (May 17, 2023).

128. Spatial Genomics, without authority and with knowledge of the 099 Patent, has actively induced and continues to actively induce infringement of one or more claims of the 099 Patent under 35 U.S.C. § 271(b) by making and selling the SG Accused Instrumentalities in the United States and intentionally instructing and otherwise encouraging others, including Spatial Genomics' customers and end users such as scientists working at laboratories that purchase the SG Accused Instrumentalities, to use the SG Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 099 Patent, including as described in Attachment DD. Spatial Genomics' active inducement of others' infringement began no later than its first

shipment and/or first installation of the SG Accused Instrumentalities to one of its customers, end users, partners, or collaborators, which, on information and belief, occurred around the time the 099 Patent issued on May 5, 2026. *See* D.I. 1, ¶ 11. On information and belief, the first direct infringement of the 099 Patent by Spatial Genomics' employees, customers, end users, partners, or collaborators occurred around the time the 099 Patent issued on May 5, 2026. On information and belief, one or more of Spatial Genomics' customers and end users of the SG Accused Instrumentalities have directly infringed and continue to directly infringe the 099 Patent by using the SG Accused Instrumentalities in accordance with Spatial Genomics' instructions and encouragement. Spatial Genomics' instruction and encouragement include, for example, distributing the documentation cited in Attachment DD, as well as user guides, published articles, and other customer-facing materials; providing instrument and software updates; and customer support via email or phone. Spatial Genomics provides this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so results in the infringement of one or more method claims of the 099 Patent by those customers and end users and/or in their performing each step of one or more methods recited in those claims. As explained below, on information and belief, Spatial Genomics acts knowingly and/or with willful blindness as to the existence of the 099 Patent and of its own infringement and the infringement by others as a result of the litigations between 10x and Vizgen, NanoString, and Element.

129. Spatial Genomics, without authority and with knowledge of the 099 Patent, has actively induced and continues to actively induce infringement of one or more claims of the 099 Patent under 35 U.S.C. § 271(f)(1) by supplying or causing to be supplied from the United States the GenePS platform and/or components thereof, such as the GenePS instrument, software, reagent, consumables, and other materials that comprise all or a substantial portion of the components of

the claims of the 099 Patent, where such components are uncombined in whole or in part in such manner to actively induce the combination of such components outside the United States in a manner that would infringe the 099 Patent if such combination occurred in the United States. Spatial Genomics' inducing acts include providing instructions, training, and support for assembly outside the United States by Spatial Genomics' customers and end users of the GenePS platform, including the instrument, reagent, consumables, software, and other materials, so that the GenePS Platform may be used according to the training, instructions, and support provided by Spatial Genomics.

130. Spatial Genomics, via its shipment or commercial installation of the GenePS platform, has contributed and continues to contribute to the infringement by others of one or more claims of the 099 Patent pursuant to 35 U.S.C. § 271(c) by importing, selling, and/or offering for sale in the United States without authority the SG Accused Instrumentalities and/or components thereof specifically so that the SG Accused Instrumentalities will be used in an infringing manner by others, including use as described in Attachment DD by Spatial Genomics' customers and end users. One or more of Spatial Genomics' customers and end users of the SG Accused Instrumentalities have directly infringed and continue to directly infringe the 099 Patent by using the SG Accused Instrumentalities in accordance with Spatial Genomics' instructions and encouragement. Attachment DD. The GenePS Platform and its components, including specifically the instruments and reagents, were designed specifically to be used in a manner that infringes the asserted claims of the 099 Patent. Moreover, as shown in Spatial Genomics' product literature, there is no other substantial use for the GenePS platform and its components. The instruments and reagents are a material part of the claimed inventions of the 099 Patent that result in infringement when used. As a result of Spatial Genomics' selling and/or offering for sale of the GenePS Platform

and its components, other entities on information and belief use these products for their intended purposes and according to Spatial Genomics' instructions and installation with the result that such entities, such as Spatial Genomics' customers and users of the SG Accused Instrumentalities, directly infringe the asserted claims of the 099 Patent, literally or under the doctrine of equivalents, for the reasons stated above and in Attachment DD. As explained below, on information and belief, Spatial Genomics acts knowingly and/or with willful blindness as to the existence of the 099 Patent and as to the fact that at least the GenePS instruments and reagents are especially made and adapted for use in an infringing manner, are not staple articles of commerce, and do not have non-infringing uses.

131. Counterclaim Plaintiffs have suffered and continue to suffer damages as a result of Spatial Genomics' infringement of the 099 Patent.

132. The infringement of the 099 Patent by Spatial Genomics has been, and continues to be, willful and deliberate. At least as of April 24, 2024, if not earlier, Spatial Genomics knew or should have known that its actions did and would constitute an unjustifiably high risk of infringement of the 099 Patent. Such conduct constitutes, at minimum, willful infringement of the 099 Patent, justifying an award of treble damages pursuant to 35 U.S.C. § 284.

133. Unless Spatial Genomics is enjoined from infringing the 099 Patent, Spatial Genomics' efforts to design, develop, market, offer to sell, and sell the SG Accused Instrumentalities will cause Counterclaim Plaintiffs to suffer irreparable injury for which damages are an inadequate remedy.

## PRAYER FOR RELIEF

10x denies that Plaintiffs are entitled to any relief whatsoever from either 10x or the Court, including the relief requested in paragraphs A-G of SG and Caltech's Prayer for Relief.

10x prays that the Court enter a judgment regarding SG and Caltech's claims and 10x's Declaratory Judgment Counterclaims as follows:

A. That SG and Caltech's claims be dismissed with prejudice and SG and Caltech take nothing;

B. That 10x be awarded such other and further relief as the Court may deem appropriate;

C. Judgment in favor of 10x for all claims;

D. A declaration that the 980 Patent, the 129 Patent, the 224 Patent, the 007 Patent, and the 868 Patent are invalid and/or unenforceable;

E. A declaration that 10x has not and does not infringe the 980 Patent, the 129 Patent, the 224 Patent, the 007 Patent, or the 868 Patent;

F. That SG and Caltech be required to pay 10x's attorneys' fees and costs;

G. A declaration that the case is an exceptional case and that SG and Caltech be required to pay 10x's attorneys' fees pursuant to 35 U.S.C. § 285; and

H. A judgment awarding 10x such other and further relief as the Court may deem just, reasonable, and proper.

Counterclaim Plaintiffs 10x Genomics, Inc. and President and Fellows of Harvard College respectfully request that this Court enter judgment in their favor and against Counterclaim Defendant Spatial Genomics, Inc. as follows:

A. For entry of judgement that the 051 Patent, the 052 Patent, the 277 Patent, and the 099 Patent have been and continue to be infringed by Spatial Genomics, either literally or under the doctrine of equivalents;

B. For entry of judgment that Spatial Genomics' infringement has been willful and deliberate;

C. For a declaration that each of the Harvard Patents is valid and enforceable;

D. For permanent injunctions enjoining the aforesaid acts of infringement by Spatial Genomics, its officers, agents, servants, employees, attorneys, parent and subsidiary entities, assigns and successors in interest, and those persons acting in concert with them, including related individuals and entities, customers, representatives, distributors, and dealers. In the alternative, if the Court finds that an injunction is not warranted, 10x and Harvard request an award of post-judgment royalty to compensate for future infringement;

E. An award of all monetary relief adequate to compensate for damages resulting from Spatial Genomics' infringement, including lost profits but in no event less than a reasonable royalty under 35 U.S.C. § 284 for Spatial Genomics' infringement, including all pre-judgment and post-judgment interest at the maximum rate allowed by law, and damages for willful infringement;

F. A declaration that this case is exceptional pursuant to 35 U.S.C. § 285, and an award of attorneys' fees to Counterclaim Plaintiffs;

G. An award of costs; and

H. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Defendant 10x and Counterclaim Plaintiffs 10x and Harvard acknowledge SG and Caltech's request for a jury trial on their claims and, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Defendant 10x and Counterclaim Plaintiffs 10x and Harvard also demand a jury trial on all issues so triable.

*Of Counsel:*

Matthew Powers
Paul Ehrlich
Li Shen
TENSEGRITY LAW GROUP LLP
555 Twin Dolphin Drive
Suite 650
Redwood Shores, CA 94065
Tel: (650) 802-6000
matt.powers@tensegritylawgroup.com
paul.ehrlich@tensegritylawgroup.com
li.shen@tensegritylawgroup.com

Azra M. Hadzimehmedovic
Kiley White
TENSEGRITY LAW GROUP LLP
1676 International Dr.
Suite 910
McLean, VA 22102
Tel: (650) 802-6000
azra@tensegritylawgroup.com
kiley.white@tensegritylawgroup.com

Dated: October 13, 2026

*/s/ Jason J. Rawnsley*
Frederick L. Cottrell, III (#2555)
Jason J. Rawnsley (#5379)
Alexandra M. Ewing (#6407)
Gabriela Z. Monasterio (#7240)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
rawnsley@rlf.com
ewing@rlf.com
monasterio@rlf.com

*Attorneys for Defendant and Counterclaim Plaintiff 10x Genomics, Inc. and Counterclaim Plaintiff President and Fellows of Harvard College*